Citation Nr: 1536788 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 13-11 062 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to service connection for residuals of a right leg injury, to include avascular necrosis of the femoral head.

2. Entitlement to service connection for a right hip disability, to include secondary to a right leg disability


REPRESENTATION

Appellant represented by: Missouri Veterans Commission


ATTORNEY FOR THE BOARD

E.I. Velez, Counsel




INTRODUCTION

The Veteran had active service from December 1975 to December 1979. 

This matter initially came before the Board of Veterans' Appeals (Board) from a rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. 

The claims were previously remanded by the Board in November 2013 and April 2015. 

This appeal was processed using the Veterans Benefits Management System. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record. A review of the Virtual VA paperless claims processing system reveals additional records which are pertinent to the present appeal. Some of the Veteran's VA treatment records are located in Virtual VA.


FINDINGS OF FACT

1. The Veteran incurred an injury to the right leg in service. 

2. Avascular necrosis of the right femoral head is a result of the injury to the right leg in service.

3. Osteoarthritis of the right hip was caused by a right leg disability.


CONCLUSIONS OF LAW

1. Resolving doubt in favor of the Veteran, residuals of a right leg injury, to include avascular necrosis of the femoral head, were incurred during the Veteran's active duty service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002 & Supp. 2014); 38 C.F.R. § 3.303 (2014).

2. Osteoarthritis of the right hip is related to the Veteran's service-connected residuals of a right leg injury. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.310, 3.303 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VCAA

The Veteran's Claims Assistance Act of 2000 (VCAA), is applicable to all claims filed on or after the date of enactment, November 9, 2000, or filed before the date of enactment and not yet final as of that date. The law eliminates the concept of a well-grounded claim, and redefines the obligations of the VA with respect to the duty to assist claimants in the development of their claims. First, the VA has a duty to notify the veteran and representative, if represented, of any information and evidence needed to substantiate and complete a claim. 38 U.S.C.A. §§ 5102, 5103 (West 2002). VA must also inform the claimant which evidence VA will seek to provide and which evidence the claimant is to provide. Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002). Second, the VA has a duty to assist the veteran in obtaining evidence necessary to substantiate the claim. 38 U.S.C.A. § 5103A (West 2002). In the instant case, the Veteran's claims for service connection are being granted. As such, any deficiencies with regard to VCAA as to those issues are harmless and nonprejudicial. 

Legal Criteria and Analysis

In order to establish service connection for the claimed disorder, there must be (1) evidence of a current disability; (2) evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus or relationship between the two. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Secondary service connection may be established if a disability is proximately due to or the result of a service-connected condition. 38 C.F.R. § 3.310(a). Secondary service connection may also be established by the degree of disability resulting from aggravation of a nonservice-connected disability by a service-connected disability. See Allen v. Brown, 7 Vet. App.439, 448 (1995).

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson, 581 F.3d at 1316; Jandreau, 492 F.3d at 1376-77. When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, meaning about evenly balanced for and against the claim, with the Veteran prevailing in either event, or whether instead the preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Veteran contends he has a right leg disability which is due to an injury in service. He also argues that he has a right hip disability that is due to his right leg disability. After a review of the claim file and resolving all reasonable doubt in the Veteran's favor, the Board finds that service connection is warranted for a right leg disability and a right hip disability.

The Veteran has claimed that in 1977 while in service he was loading vehicles on board the USS San Bernardino, he jumped out of a truck bed, fell and broke his right leg. He claims that Navy personnel took him to the ship's doctor and he was told he had fractured his right leg and was treated with a cast for six weeks. He has stated that since the incident in service when he fell out of the truck and broke his leg, he has experienced pain in his leg and problems with his gait. Finally, he has stated that he is not sure why there is no record of his fracture in his service treatment records (STR), but that he was on a ship and is not sure whether his STRs were with him or what could have happened. 

A May 1977 STR indicated the Veteran sustained an abrasion to his right leg and right thigh, but subsequent STRs indicated that this injury may have been sustained on the left leg. However, an April 1979 STR indicated the Veteran had an abrasion of the right leg and early cellulitis. 

Initially, the Board notes that although the Veteran's STRs are silent for a broken right leg, the Veteran is competent to report factual matters of which he has first-hand knowledge, such as breaking his right leg. See Washington v. Nicholson, 19 Vet. App. 362 (2005). Additionally, an August 1978 STR referenced an auto accident with multiple abrasions for which he was placed on light duty due to the severity of the injuries; however, this record specifically mentioned a cerebral concussion but was silent as to any issue with the right leg.

The Board finds that the Veteran is not only competent to report an injury to his right leg in service, but is also credible. While the STRs do not specifically show a fracture of the right leg, the findings in the STRs lend support to the notion that a right leg injury actually occurred while in service. Therefore, the Board will accept that a right injury did occur in service. Having done so, the remaining question as to the claimed disability of the right leg, is whether the currently diagnosed disability of the right leg is related to the injury in service. 

The Veteran has been diagnosed with osteoarthritis of the right hip, fracture of the right lower leg, and avascular necrosis of the femoral head of the right leg. Post service treatment records show the Veteran has been treated for right leg problems, including, a February 2011 private treatment record noted mild shortening of the right leg; a November 2010 VA treatment record noted a moderate to severe limp. Records also show treatment for osteoarthritis of the right hip, which led to a total hip replacement in March 2011. 

As an initial matter, the Board notes that there is no competent evidence of record reflecting that the Veteran developed osteoarthritis of the right hip within one year of discharge from active duty. As such, service connection for osteoarthritis of the right hip cannot be granted on a presumptive basis. 38 C.F.R. §§ 3.307, 3.309. 

There are two medical opinions of record. In the April 2015 remand, the Board found that the December 2013 VA medical opinion is inadequate and a new opinion was ordered and obtained in April 2015. The Board has reviewed the April 2015 VA medical opinion and finds it adequate. As the April 2013 opinion has been deemed inadequate, the April 2015 opinion is the only competent medical opinion of record. 

The April 2015 VA medical opinion states that According to Mayo Clinic.org, avascular necrosis is the death of bone tissue due to a lack of blood supply. Common causes of avascular necrosis of the femoral head include dislocation and fracture. The examiner then opined that the avascular necrosis of the femoral head was consistent with the reported type of injury in service which would have been a leg fracture or dislocation. The examiner also stated that while there are no fracture lines noted in x-rays and no identifiable fracture residuals, all evidence of a fracture of the head of the humerus was removed during the March 2011 surgery. Moreover, the radiographic evidence of fracture has been thrown away. As to the location of the fracture site, it is most likely that the fracture site was in the femoral head/femoral neck and that this has been discarded. Severe osteoarthritis of the femoral head would be an identifiable fracture residual and would indicate bony impairment however. The examiner finally opined that if we except that the Veteran is telling the truth when he states that he injured his right leg while on active duty, it is at least as likely as not that the Veteran developed avascular necrosis of the femoral head secondary to that injury which eventually led to the right total hip replacement in March 2011; and, it is at least as likely as not that the Veteran's right hip disability is related to his active duty military service, specifically, the injury that he reports occurred while on active duty.

With regards to the right hip, the examiner stated that if we except that the Veteran is telling the truth when he states that he injured his right leg while on active duty, it is at least as likely as not that the Veteran's right hip disability is related to his active duty military service, specifically, the injury that he reports occurred while on active duty. The examiner further noted that the mechanism of injury is consistent, jumping out of a truck can lead to dislocation/fracture of the femoral head. Because the Veteran was on a small ship with limited medical facilities it is reasonable that he have been placed on light duty for several weeks and simply hobbled about while the injury to the hip healed. And, it is quite likely that a young man, experiencing a nondisplaced fracture of the hip would do exactly that.

Considering the evidence as noted above, and resolving all reasonable doubt in the Veteran's favor, the Board finds that service connection is warranted for both, residuals of an injury of the right lower leg, and osteoarthritis of the right hip. Indeed, the only competent medical opinion of record states that the current disabilities of the right leg is due to the reported injury to the right leg in service, and that the right hip osteoarthritis was caused by the right leg disability. The opinion includes a thorough reasoning and is based on a review of the record and examination of the Veteran. It stands uncontradicted by any other competent opinion. 

The Board recognizes that the April 2015 VA examiner provided opinions which considered both possibilities, believing the Veteran's account of an injury in service, and finding that there was no injury to the right leg in service. However, as noted above, the Board has accepted the Veteran's account of an injury to the right leg in service. Therefore, the only medical opinion for consideration is the one addressing the issue from the premise that there was an injury to the right leg in service. 

Accordingly, the Board concludes that it is at least as likely as not that the Veteran's residuals of a right leg injury, avascular necrosis of the right femoral head, was caused by service; and, osteoarthritis of the right hip was caused by or is proximately due to his now service-connected right leg disability. Resolving doubt in favor of the Veteran, the claims of entitlement to service connection are granted


ORDER

Service connection for residuals of a right leg injury, to include avascular necrosis of the femoral head, is granted.

Service connection for osteoarthritis of the right hip is granted.



____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs